# UNITED STATES *v.* MAGNOLIA PETROLEUM COMPANY.

## CERTIORARI TO THE COURT OF CLAIMS.

No. 283.   Argued January 4, 1928.—Decided February 20, 1928.

1. Section 1019 of the Revenue Act of 1924, which provides that interest on a refund of any internal revenue tax erroneously or illegally assessed or collected shall be allowed from the date when the tax was paid, cannot be construed retroactively as substituting that basis of interest recovery for the basis in the Act of 1921, as to refunds which had been allowed under the earlier Act but not computed or paid when the later Act was passed. P. 162.

2. This conclusion is not affected even if it be assumed that the interest allowed by the earlier Act was not within the saving clause accompanying the repeal of that Act by the later one, a question not here raised and therefore not considered. P. 163.

3. Save as given by Congress, there was no right to the interest. *Id.*

4. Under § 1324 (a), subdivision (1), Act of 1921, a claimant is not entitled to interest from the time when the tax was paid if the protest accompanying the payment gave no information and stated nothing that would aid in determining whether an overassessment had been made. P. 164.

63 Ct. Cls. 173, reversed.

CERTIORARI, 275 U. S. 512, to a judgment of the Court of Claims, allowing a claim for interest on refunds of income and excess profits taxes.

*Assistant Attorney General Galloway,* with whom *Solicitor General Mitchell* and *Mr. Sewall Key,* Attorney in the Department of Justice, were on the brief, for the United States.

*Mr. Barry Mohun,* with whom *Messrs. W. H. Francis* and *George E. Elliott* were on the brief, for respondents.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Respondent was assessed and paid for 1916 an income tax of $105,571.95 and for 1917, income and excess profits

taxes of $1,131,075.86 in excess of the amounts for which it was liable.    October 11, 1923, the Commissioner of Internal Revenue so determined and, November 22, 1923, the respondent received certificates showing such overassessments and Treasury warrants for the return of these amounts.    Each certificate included a statement that "interest status will be determined as soon as necessary data can be assembled."

Section 1324(a) of the Revenue Act of 1921, which was then in force, authorized interest from the date of the payment of the taxes if paid under protest; but, if not paid under protest or pursuant to an additional assessment, it allowed interest to commence six months after the filing of claim for refund.    Section 1019 of the Revenue Act of 1924, provided that interest on refunds should be computed from the date the taxes were paid.[1]

January 18, 1924, the Commissioner notified respondent that the interest payable on the refunds had been determined.    July 2, 1924, after the passage of the Revenue Act of that year, the Commissioner wrote respondent that

---

[1] Section 1324 (a) of the Revenue Act of 1921, c. 136, 42 Stat. 227, 316: " That upon the allowance of a claim for the refund of  . . internal revenue taxes paid, interest shall be allowed and paid upon the total amount of such refund   .  .  as follows: (1) if such amount was paid under a specific protest setting forth in detail the basis of and reasons for such protest, from the time when such tax was paid, or (2) if such amount was not paid under protest but pursuant to an additional assessment, from the time such additional assessment was paid, or (3) if no protest was made and the tax was not paid pursuant to an additional assessment, from six months after the date of filing of such claim for refund or credit   .  .  ."

Section 1019 of the Revenue Act of 1924, c. 234, 43 Stat. 253, 346 (U. S. C., Tit. 26, § 153): " Upon the allowance of a credit or refund of any internal-revenue tax erroneously or illegally assessed or collected,   .  .   interest shall be allowed and paid on the amount of such credit or refund   .  .   from the date such tax   .  .   was paid to the date of the allowance of the refund   .  .  ."

318°—28——11

the amounts stated in his letter of January 18, 1924,—corrected by reason of an error as to the date of filing the claim for refund of 1917 taxes—would be paid, and on July 18, 1924, issued a Treasury warrant to respondent for $35,369.05, being $19,171.21 on the refund of 1916 taxes and $16,197.84 on the refund of 1917 taxes. Respondent, saving its right to sue for additional interest, accepted payment of the amount specified, and later brought this suit. The Court of Claims held that the Act of 1924 applied, calculated interest from dates of payment of the taxes, and gave judgment for $365,799.42. This Court granted a writ of certiorari. 275 U. S. 512.

The petitioner maintains that the interest should be computed according to § 1324(a) of the Act of 1921. Respondent contends that by § 1019 of the Act of 1924 and contemporaneous repeal of § 1324(a), the basis of interest allowances was changed and that, as the interest had not yet been paid, respondent became entitled to an amount calculated according to the later enactment. Undoubtedly it was within the power of Congress to apply that basis to claims like those of respondent. But the question is whether the statute should be so construed. The date of " allowance " was October 11, 1923, when the Commissioner approved the refunds. *Girard Trust Co.* v. *United States,* 270 U. S. 163, 169. Under § 1324(a), " upon the allowance " of the refunds, respondent became entitled to interest according to the rule then in force. Cf. *Blair* v. *Birkenstock,* 271 U. S. 348, 350. Computation and payment were all that remained to be done. There is nothing to suggest that § 1019 was intended to change the rule as to refunds theretofore allowed. The language employed shows the contrary. The words are "upon the allowance of . . a refund . . interest shall be allowed . . from the date such tax . . was paid." Statutes are not to be given retroactive effect or construed to change the status of claims fixed in accordance with earlier pro-

visions unless the legislative purpose so to do plainly appears.  *United States* v. *Heth,* 3 Cranch 399, 413; *White* v. *United States,* 191 U. S. 545, 552; *Shwab* v. *Doyle,* 258 U. S. 529, 534.  Respondent calls attention to § 1100 of the Act of 1924 repealing the Act of 1921 and says that the saving clause therein does not extend to interest on refunds allowed under § 1324(a).  But, save as given by Congress, respondent had no right to interest; as shown above, the basis prescribed by the later Act was not substituted for that fixed by the earlier one; and, as respondent's right to have the rule prescribed by the Act of 1921 applied is not questioned, we need not consider the effect of the repealing and saving clauses.  It is clear that respondent is not entitled to allowances on the basis of the Act of 1924, and that the judgment must be reversed.

Respondent, assuming that the Act of 1921 applies, insists that the facts found by the lower court show that the Commissioner's allowances of interest were erroneous and that it is entitled to much more than it has received.

It appears from calculations made in its brief that if the basis contended for by the respondent be applied to the refund of the 1916 tax, respondent has been allowed and paid $864.99 in excess of what it was entitled to have. As petitioner is not complaining of that, we need not consider the matter.

As to the 1917 taxes, respondent filed returns May 18, 1918, but paid no tax thereon.  May 27 following, it filed amended returns showing taxes of $1,966,600.87, and, on June 15, paid that amount under protest.  Petitioner contends that the protest was not sufficient under § 1324(a) to support a claim for interest from the date of payment. On June 12, 1920, respondent filed a claim for the full amount paid; and, September 20, 1920, filed claim for $1,005,519.42.  October 8, 1923, the Commissioner wrote respondent that its claim first filed would be allowed for $1,131,075.86 and that the one last filed would be rejected

in full. January 18, 1924, the Commissioner wrote respondent concerning the interest allowance stating that no part of the claim first filed had been allowed; that $105,556.84 had been allowed on the basis of the claim last filed and that $1,025,519.52 of the refund was "attributable to points not raised in the claim." The interest paid was calculated on the amount said to have been allowed on the latest claim for the period commencing March 20, 1921—six months after the filing of that claim—and ending October 11, 1923, the date of the allowance.

If the protest was sufficient under § 1324(a), interest should have been calculated on the amount of the refund from the date of the payment of the taxes. The lower court held it valid. In order to meet the condition specified in § 1324(a), the payment must be made "under a specific protest setting forth in detail the basis of and reasons for such protest." The findings set forth its language. The grounds asserted were that the taxing Acts were ambiguous, uncertain and unconstitutional; that they did not apply to respondent; that the regulations prescribed under them were not authorized, and that the method prescribed for applying the rates under the War Excess Profits Tax Act was arbitrary and unjust. It was not found that any part of the refund was allowed on any ground or for any reason specified in the protest. It requires no discussion to show that these general statements were not sufficient to constitute a basis for the allowance of interest from the date of the payment of the taxes. The protest gave no information and stated nothing that would aid in determining whether an overassessment had been made. It was not sufficient. *Girard Trust Co.* v. *United States, supra,* 172.

Assuming the protest inadequate, respondent insists that it is entitled to interest on the full amount of the refund from six months after the filing of its first claim. But, as the merits of that contention depend upon am-

biguous findings above referred to, the lower court should again consider the case and make definite determination of the controlling facts and give judgment thereon.

> The judgment is reversed and the case is remanded for further proceedings in harmony with this opinion.