**T. Michael BROWN, Plaintiff–Appellant,**

v.

**The ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant–Appellee.**

Court of Appeals of Tennessee,
Middle Section.

May 16, 1980.

Certiorari Denied by Supreme Court
Sept. 15, 1980.

John P. Branham and Darrell G. Townsend, Howell & Fisher, Nashville, for plaintiff–appellant.

Robert J. Walker and L. Wearen Hughes, Bass, Berry & Sims, Nashville, for defendant–appellee.

## OPINION

LEWIS, Judge.

Plaintiff sued defendant in the Circuit Court for Davidson County, Tennessee, and alleged that as a result of defendant's negligence and bad faith, plaintiff lost his job and was, therefore, entitled to damages.* The case was transferred to the Chancery Court for Davidson County and tried before the Honorable Robert S. Brandt, Chancellor, without the intervention of a jury. From the Chancellor's holding that he had no cause of action and dismissing his complaint, plaintiff has appealed.

---

* Plaintiff's complaint also contained a defamation count. As noted by the Chancellor, that count has apparently been abandoned.

Plaintiff was an insurance adjuster for the Cincinnati Insurance Company (Cincinnati). To perform his work he was furnished a company car. Because of a past history of accidents, Cincinnati informed plaintiff in 1975 that if he was "involved in an at-fault accident within the next two years, it will be grounds for termination." ** In October, 1976, plaintiff had an accident in a company car. The driver of the other car, Mrs. Jeanette Haynes, claimed property damage as a result of the accident. Cincinnati carried liability insurance on its car with defendant. Plaintiff notified both Cincinnati and defendant about the accident. Proof is in the record that in several conversations with defendant's claims service assistant and assistant claims manager plaintiff told them he did not think he was at fault and asked them to send a representative to take his statement and to view the scene with him and that he gave them a witness's name. Proof is also in the record that defendant agreed to do what plaintiff asked and that plaintiff told defendant's assistant claims manager that plaintiff would lose his job if defendant made a payment for the accident.

After conducting an investigation, defendant paid Mrs. Haynes's property damage claim. The Chancellor found, and we concur, that defendant negligently conducted its investigation. Defendant's claims service assistant testified that defendant based its decision to pay the property damage on conversations with plaintiff and the claimant, on the police report of the accident, and on photographs made for the investigation. The photographs, however, were not of the intersection where the accident occurred. Defendant did not do any of the actions requested by plaintiff.

After defendant paid the property damage claim, plaintiff lost his job. Plaintiff's supervisor, Hayden D. Davis, testified as follows:

Q. Did you base your determination to terminate Mr. Brown from Cincinna-

** Letter from Hayden D. Davis, plaintiff's supervisor at Cincinnati, to T. Michael Brown, plaintiff (Nov. 20, 1975).

ti Insurance Company after being advised that St. Paul was making payments to the other party in the October 1976 accident?

A. Basically, yes.

Q. Was it your understanding, Mr. Davis, that St. Paul was disposing of the October 1976 claim against Mr. Brown as an at-fault accident?

A. I don't know what they would call it, but I was aware that they were paying the adverse party.

Q. In your assessment, did that indicate to you that they considered it to be an at-fault accident?

A. Yes.

Mr. Davis further testified, however:

Q. Now, you never received any direct communication from St. Paul as to their investigation of the two accidents here in question or their determination of fault, did you?

A. Not direct.

In March, 1977, Mrs. Haynes filed suit against plaintiff to recover for personal injuries allegedly sustained in the October 1976 accident. Defendant provided plaintiff with an attorney. A countersuit was filed by Cincinnati for property damage to its automobile. After trial the jury returned a verdict for plaintiff in the personal injury action and for Mrs. Haynes on the counterclaim.

In October, 1977, plaintiff filed this suit against defendant. From the judgment of the Chancellor dismissing his suit, plaintiff has appealed and presents two issues which may be summarized as follows: (1) Whether plaintiff has a cause of action sounding in tort against defendant for breach of defendant's duty of good faith and (2) Whether plaintiff has a cause of action sounding in tort against defendant for breach of a voluntarily assumed duty to use reasonable care in investigating the October 1976 accident. We will discuss these issues together.

■ In Tennessee that an insurance company may be liable in tort in an action based on bad faith is clear. *Carne v. Maryland Casualty Co.,* 208 Tenn. 403, 406, 346 S.W.2d 259, 261 (1961); *Southern Fire & Casualty Co. v. Norris,* 35 Tenn.App. 657, 668–70, 250 S.W.2d 785, 790 (1952). Here, after plaintiff's request for additional findings of fact, the Chancellor found that defendant "was negligent in its investigation of the October 26, 1976 collision" and that it "acted in bad faith in its investigation, conduct towards the plaintiff, and settlement of the claim."

■ Even assuming then that defendant has breached its duty of good faith in its investigation, the question of proximate cause remains. "Once a duty to plaintiff is established, and negligence of the defendant established, the ultimate question is whether the negligence of defendant was the proximate or legal cause." *Lancaster v. Montesi,* 216 Tenn. 50, 56, 390 S.W.2d 217, 220 (1964). Prosser refers to proximate cause as "some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered." W. Prosser, *Handbook of the Law of Torts,* § 41 (4th ed. 1971). To determine if this connection exists, first whether defendant's conduct is the cause in fact of plaintiff's damage must be determined. *See id.* Although the testimony, quoted above, of Cincinnati's employee, Mr. Davis, indicates that Cincinnati based its decision to terminate plaintiff's employment on its knowledge that defendant was making payments to the claimant for the 1976 accident, his testimony further shows that Cincinnati merely assumed, without being told, that defendant's payments meant that defendant had determined that plaintiff was at fault and further that defendant did not, in fact, ever communicate the circumstances of its investigation or determination about fault directly to Cincinnati. This lack of communication of an assessment of fault raises serious questions about whether defendant's bad faith was the cause in fact of plaintiff's loss of his job.

An additional consideration, however, shows clearly that even if defendant's conduct was the cause in fact of plaintiff's damage, that conduct was not the proximate cause of the damage. Prosser suggests that "legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability." *Id.* Another way to state this consideration is "as an issue of whether the defendant is under any duty to the plaintiff, or whether his duty includes protection against such consequences." *Id.* at § 42. Since in Tennessee defendant does have a duty to exercise good faith in its dealings with plaintiff, we must look at the scope of that duty to determine if it includes protection from plaintiff's loss of his job. The Court in *Southern Fire & Casualty Co. v. Norris, supra,* said that the insurer's duty is to "exercis[e] good faith and diligence in protecting the interest of its insured" which is "to indemnify the insured against loss." *Id.,* 35 Tenn.App. at 668, 670, 250 S.W.2d at 790. The Court further noted: "This duty arises not so much under the terms of the contract but it is said to arise because of the contract and to flow from it." *Id.* at 670, 250 S.W.2d at 790; *see Carne v. Maryland Casualty Co., supra,* 208 Tenn. at 408, 346 S.W.2d at 262. The duty has been found to extend to the insurer's failure to settle within policy limits; *Carne v. Maryland Casualty Co., supra; Southern Fire & Casualty Co. v. Norris, supra;* and to the insurer's settling of an uninsured motorist claim. *MFA Mutual Insurance Co. v. Flint,* 574 S.W.2d 718 (Tenn.1978). This duty does not, however, extend to the insured's interests that do not arise from the contract. Since loss of a job is not an interest of the insured that arises from the insurance contract, defendant's conduct was not the proximate cause of plaintiff's loss of his job.

■ Plaintiff suggests that even if defendant has not breached its duty of good faith, it has breached its voluntarily assumed duty to use due care in its investigation of the 1976 accident. Even if defend-

ant did agree to take certain steps as plaintiff testified and even if defendant's investigation which did not follow those steps was negligent as the Chancellor found, defendant did not breach a voluntarily assumed duty. Defendant was under a duty, as discussed above, to conduct itself so as to protect the interest of its insured against loss. This duty required defendant to consider the interest of plaintiff and to "deal fairly and in good faith" with plaintiff in conducting its investigation of the accident. *Southern Fire & Casualty Co. v. Norris,* supra, 35 Tenn.App. at 670, 250 S.W.2d at 790.

The judgment of the Chancellor is affirmed with costs to plaintiff.

TODD and DROWOTA, JJ., concur.